**Affirm and Opinion Filed April 7, 2020**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01008-CR

**ARNULFO MERCADO-PENA, JR., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-84147-2017**

# MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Carlyle
Opinion by Justice Pedersen, III

A jury found appellant Arnulfo Mercado-Pena guilty of evading arrest with a motor vehicle, which jurors found was used as a deadly weapon. The trial court assessed his punishment at sixty years' confinement in the Institutional Division of the Texas Department of Corrections. In three issues, appellant contends that (1) the trial court violated his constitutional and statutory rights by failing to comply with Chapter 46B of the Texas Code of Criminal Procedure, (2) the trial court erroneously found him competent to proceed to trial, and (3) he was denied effective assistance of counsel. We affirm.

## Background

A police officer was on patrol in Princeton, Texas when he observed appellant driving a vehicle at a speed that appeared to be unreasonable and imprudent. The officer, who was in a marked police car, turned on his overhead lights and siren and pursued the vehicle. He testified that appellant was driving approximately 100 miles per hour in a sixty mile-per-hour zone and was passing other cars in a dangerous manner. Ultimately, appellant's vehicle ran out of gas and slowed down. Appellant jumped out and ran into a field. The officer followed and arrested him. Appellant remained in custody after his arrest.

The proceedings prior to trial are of significance to our review. The case was first set for trial on June 11, 2018. The record shows, however, that early on the morning of June 11, appellant was found in his cell following a possible suicide attempt.

Doctor Kristi Compton, a licensed psychologist, concluded that appellant was not competent to stand trial that day because:

> He is morbidly depressed. The suicide attempt was a lethal attempt. He was started on Risperdal four days ago, and it can take up to two to four weeks for it to have its effectiveness.

Two weeks before, Dr. Compton had examined appellant[1] and concluded that he was malingering. However, she testified on June 11 that she was told he was unconscious

---

[1] The record does not explain what triggered that examination. A Mental Illness Assessment was submitted on May 28, 2018 following this assessment.

when found and—while she had not performed malingering tests this time—she had serious concerns about whether he was able to assist in his defense. She reminded the court and those present that a person can be both mentally ill and malingering. She did predict that—with hospitalization, drug therapy, and time for the drugs to work—he could regain competency in two to four weeks. After conferring with another mental health professional, the trial court ordered a continuance and returned appellant to jail to continue his medicine regimen.

Pursuant to an order by the trial court, Dr. Compton conducted a comprehensive competency evaluation of appellant on July 25, 2018. Her report related that information on which she had earlier relied—specifically, that appellant had lost consciousness in the June suicide attempt and required resuscitation—was incorrect; she concluded that appellant had not intended the attempt to be fatal. And as to his mental condition on July 25, she concluded:

> [Appellant] demonstrated a sufficient understanding of his case, proceedings, and potential penalties. There is no evidence that he is suffering from a severe psychiatric disorder that impairs his capacity to communicate with his attorney, process information, weigh the pros and cons of various defense strategies, nor is there any evidence that he cannot testify in his own behalf. Thus, he exhibits sufficient capacity to assist in his defense if he chooses to do so.

Based on these assessments, the doctor found appellant competent to stand trial.

Likewise, the trial court found that appellant was competent to stand trial, and the trial went forward. The State called a single witness, the patrol officer who arrested appellant. The defense rested without calling a witness. The jury found

appellant guilty of evading arrest using a motor vehicle and found that he had used the vehicle as a deadly weapon.

During the punishment phase of trial, the State admitted exhibits that established appellant's prior offenses for failure to render assistance, resisting arrest, aggravated sexual assault of a child, aggravated assault causing serious bodily injury, and failure to register as a sex offender.[2] The State also offered testimony of appellant's gang membership.

Appellant's sister testified on his behalf, explaining that he had a medical history of seizures and that he had experienced one immediately before the incident for which he was convicted. She testified that appellant had been released from prison a matter of weeks before this incident, and she was not sure if he had obtained the medications he needed.

Appellant's counsel asked the trial court to assess a minimum sentence of twenty-five years; the court sentenced appellant to sixty years. This appeal followed.

---

[2] Because defense counsel had stipulated to the admissibility of the exhibits, a number of other offenses cited in motions to revoke were also admitted.

## Competency to Stand Trial

Due process does not allow a criminal defendant who is incompetent to be put to trial. *Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013). The Legislature has codified procedures for determining competency to assure that incompetent defendants do not stand trial. TEX. CODE CRIM. PROC. ANN. ch. 46B; *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). We review a trial court's actions under these procedures for an abuse of discretion. *Routon v. State*, No. 05-15-01278-CR, 2017 WL 85417, at *3 (Tex. App.—Dallas Jan. 10, 2017, pet. ref'd) (mem. op., not designated for pub.). We may not substitute our judgment for that of the trial court; instead we ask whether the trial court's decision was arbitrary or unreasonable. *Id.*

We presume a criminal defendant is competent to stand trial unless he is proved incompetent by a preponderance of the evidence. CRIM. PROC. art. 46B.003(b). The defendant is incompetent to stand trial if he lacks:

> (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or

> (2) a rational as well as factual understanding of the proceedings against the person.

*Id.* art. 46B.003(a). We give great deference to the trial court's first-hand factual assessment of a defendant's competency and to its factual findings. *See McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003).

*Following Chapter 46B Procedures*

Appellant's first issue argues that the trial court failed to comply with the procedures set out in Chapter 46B of the Texas Code of Criminal Procedure concerning incompetency to stand trial. Specifically, appellant contends that the trial court failed to comply with article 46B.071(a) when, after he was declared incompetent on June 11, 2018, the trial court neither committed him to a facility under article 46B.073 nor released him on bail. He also complains that the report declaring him incompetent on that date was not made part of the record and that there is no evidence he received treatment as required by Chapter 46B prior to the finding that he was restored to competency. We address these arguments in turn.

Appellant was initially scheduled to stand trial on June 11, 2018. Our record includes the transcript of a hearing that morning. The trial judge began by stating that appellant had been discovered in his cell after an apparent suicide attempt and, as a result, the judge was "trying to address whether or not [he was] going to push this case to trial." The judge went on to explain that he had asked Dr. Compton to evaluate appellant and that "[a]fter I hear from her, then I am going to determine on whether or not we are ready to proceed."

Dr. Compton testified that she understood appellant's suicide attempt was a lethal attempt and that appellant was morbidly depressed. She explained that her concern was appellant's capacity to maintain appropriate courtroom decorum and to assist in his defense. She stressed that appellant "clearly [had] an understanding of

the role of [the] parties in his case. That's without question." She also testified that a defendant could be malingering and suffer from mental illness at the same time. But she acknowledged that she had concerns as to whether appellant could assist in his defense. She explained to the court that appellant had begun a drug treatment that—she believed—would become effective in treating his depression in two to four weeks.

Given that appellant had earlier been adjudged to be malingering, the trial court expressed concern that the suicide attempt might be merely an attempt to avoid trial; Dr. Compton testified that she had not had enough time to test him that morning to determine if he was malingering. The judge discussed at some length that he thought the jailer's communication could be understood to describe a staged suicide attempt rather than a lethal one. Following the doctor's testimony, the judge granted a continuance and initially stated he would order the appellant to Green Oaks, a mental health facility. However, after conferring off the record with both attorneys and a Ms. Ferguson (whom the judge identified as the director of the Mental Health Managed Counsel Program), the judge stated that Ms. Ferguson "has advised the court that the competency and restoration could occur in the jail with the appropriate orders by the Court for that, and/or force meds, if the Defendant decides not to cooperate. So I am going to order that and vacate the order with regard to Green Oaks." The judge then engaged in a lengthy conversation with appellant on the record.

Appellant's first issue focuses on repercussions of this June 11 hearing. He argues that the trial court failed to follow the statutory options available to it after determining appellant was incompetent to stand trial at that hearing. When such a determination has been made, the court shall:

> if the defendant is charged with an offense punishable as a Class A misdemeanor or any higher category of offense:
>
> > (A) release the defendant on bail under Article 46B.072; or
> >
> > (B) commit the defendant to a facility or a jail-based competency restoration program under Article 46B.073(c) or (d).

CRIM. PROC. art. 46B.071(a)(2). Appellant was charged with a felony. Accordingly—if the trial court actually did make a determination that appellant was incompetent to stand trial on June 11—it was required to release appellant on bail or to commit him to an appropriate facility.

We look first to the threshold issue: whether the trial court made a determination that appellant was incompetent to stand trial on June 11. There is no formal, written order in the record making such a determination. Indeed, the only document in our record related to the June 11 proceeding is a Notice of Agreed Setting, passing the case until July 30. That document is signed by both parties' attorneys and is dated June 11; the agreement was clearly reached after the June 11 hearing. It makes no reference to appellant's competency. The clerk's record, thus, is consistent only with the trial court's granting a continuance, not determining that appellant was incompetent to stand trial.

Likewise, the reporter's record of the June 11 hearing contains no order or finding that the trial court—as opposed to Dr. Compton—had determined appellant was incompetent to stand trial that day. To the contrary, the record suggests the trial court concluded that no evidence rationally supported a finding that appellant was incompetent. *See Boyett*, 545 S.W.3d at 564 (identifying a trial court's initial standard as requiring some evidence that rationally may lead to a conclusion of incompetency) (citing *Turner*, 422 S.W.3d at 692). The trial judge addressed the jail report and stated his understanding that the report described a staged incident. He referred to the past finding that appellant had been malingering, a condition that Dr. Compton was unable to test for that morning. The judge stressed that he would consider the doctor's testimony, but that he would make the decision whether the case would proceed that day. And importantly, the judge engaged in a lengthy conversation with appellant on the record. The two discussed appellant's depression and his fear of a life sentence. The judge explained to appellant that the result could be far less than the life sentence he feared and that appellant had to stand trial. In the course of the conversation, appellant attempted to negotiate a better plea deal than he had been last offered, and he stated that he understood the enhancement aspect of his sentence. Appellant was at all times coherent and rational. We understand the trial court was not to weigh evidence of incompetency against evidence of competency. *Boyett*, 545 S.W.3d at 564. We conclude the trial court was not improperly weighing evidence but was discerning whether evidence of

–9–

incompetency actually existed. We also conclude he could have found that no such evidence existed.

Finally, the record contains no objection by appellant or his counsel to his return to jail to continue his medical regimen. Indeed, appellant stated he had no problem with taking his medicine as required. The parties then re-set the trial to a date certain with no mention of the need for a return to competency. Although there was evidence of appellant's depression at the hearing, the fact that a criminal defendant is mentally ill does not by itself mean he is incompetent. *Turner*, 422 S.W.3d at 691. We conclude that the record as a whole indicates the trial court granted a continuance on June 11; it did not make a determination that appellant was incompetent. Accordingly, the court was not obligated to comply with article 46B.071(a).

Appellant next complains that Dr. Compton's report declaring him incompetent on June 11 was not made part of the record. The reporter's record from that date does not refer to a written report. Instead, the record suggests that the doctor's evaluation of appellant was made relatively quickly and was based to a significant degree on her interpretation of the early jail communication concerning appellant's attempted suicide.[3] We find no requirement of a written report when

---

[3] The jailer's communication was read into the record by the trial judge.

there has been no determination of incompetency by the trial court.[4] Dr. Compton testified, and a record was made of her testimony. We discern no error related to the absence of a written report.

In his final argument under this issue, appellant argues the record contains no evidence showing that he received treatment prior to a finding that he had been restored to competency. Again, provisions concerning restoration to competency are not at issue here, when appellant was never determined to be incompetent.

We overrule appellant's first issue.

*Competency at the Time of Trial*

In his second issue, appellant argues that the trial court erred when it found him competent to stand trial on July 25, 2018. He contends the trial court was aware that he was not taking his medications, that he had previously received a diagnosis of a bipolar disorder with psychotic features, and that he had attempted suicide in 2011. He also challenges Dr. Compton's pre-trial evaluation report, which opined that he was competent to stand trial, because it conflicts with the jail record concerning his June 11 suicide attempt.

The trial court was required to determine whether appellant was able to consult with his attorney "with a reasonable degree of rational understanding" and

---

[4] Appellant cites article 46B.0755(b) for the proposition that an expert's report should be shown in the record. That article addresses the expert report produced to determine whether a defendant has been returned to competency following a determination that he was incompetent. CRIM. PROC. art. 46B.0755. It is not relevant here where no such determination was made.

was rationally and factually able to understand the proceedings against him." CRIM. PROC. art. 46B.003(a). Again, we review the court's determination for an abuse of discretion. *Routon*, 2017 WL 85417, at *3. And we give great deference to the trial court's assessment of a defendant's competency. *See McDaniel*, 98 S.W.3d at 713.

Our review of the record does not disclose any evidence before the court at the time of trial that would suggest appellant lacked either the ability to consult rationally with his lawyer or an understanding of the proceedings against him. Appellant points to a trial court comment directed to him during pre-trial proceedings that "[t]aking your meds has been a problem." But this statement is ambiguous at best. Appellant offered no evidence as to the nature of this "problem" and how it might prevent him from communicating with his counsel or participating in the trial. Likewise, evidence of his past diagnosis or troubled behavior does not speak to his abilities at the time of trial. Evidence of mental illness, standing alone, is not proof of incompetency. *Turner*, 422 S.W.3d at 691. The issue is whether appellant could meet the statute's competency standards despite any ongoing mental health problems. Appellant has not pointed us to anything in the record—and our review has not identified anything—that would indicate he could not communicate with his attorney effectively or that he did not rationally and factually understand the nature of the proceedings against him.

Finally, appellant attempts to discredit Dr. Compton's report by identifying inconsistencies between her conclusions and certain jail records from the time of his

purported suicide attempt in June. He relies on the report by the first officer to respond to his cell that morning, stating that he saw:

> Appellant slumped over the toilet with a noose tied around his neck attached to the vent above the toilet tied in a knot. He and another officer entered the cell to render aid with the other officer cutting below the knot while he grabbed Appellant and placed him on his side. Nurse James then entered the cell immediately behind them to render aid and provide medical assistance to Appellant.

While this report suggests that jail officials correctly responded to an apparent emergency, Dr. Compton interviewed medical providers at the jail who confirmed that there was no actual emergency. Appellant did not require resuscitation and was not in respiratory distress after the incident. Instead, all his vital signs were normal; he was alert and oriented. The evidence, thus, suggests not that appellant was suicidal before his earlier trial date, but that he was malingering.

That suggestion was confirmed by an extensive series of tests given to appellant by Dr. Compton prior to trial. In each phase of the testing, appellant scored at a level that identified him as malingering. And as to appellant's competency to stand trial, Dr. Compton observed that appellant "demonstrated a sufficient understanding of his case, proceedings, and potential penalties." She found no evidence that he suffered from any psychiatric disorder severe enough to "impair his capacity to communicate with his attorney, process information, weigh the pros and cons of various defense strategies, nor is there any evidence that he cannot testify in his own behalf." She determined that he had the capacity to assist with his defense,

and she ultimately concluded that appellant was competent to stand trial. This report was a detailed, professional evaluation of appellant's mental condition at the time of trial.

Moreover, before the trial court found appellant was competent to stand trial, both appellant's counsel and the prosecutor stated that they had no objection to that finding. During arraignment, appellant's counsel stated that appellant "understands what he is charged with. He understands the enhancements that have been set forth in this matter. He has elected to have a jury trial and pleads not guilty at this point."

The trial court could rely on Dr. Compton's expert opinion and on these representations by counsel when evaluating appellant's competency. The court could also rely on its own assessment of appellant's behavior and condition. Appellant offered no evidence that controverted the trial court's conclusion.

Given our review of the record as a whole, we conclude the trial court did not abuse its discretion in determining appellant was competent to stand trial. We overrule appellant's second issue.

## Ineffective Assistance of Counsel

In his third issue, appellant contends that he was denied effective assistance of counsel. He alleges that his attorney failed: to "investigate and litigate" appellant's mental health status, to object to a comment by the prosecutor implicating appellant's Fifth Amendment right not to testify, to request a continuance when a material witness became unavailable at trial, to object to lack of

notice and hearsay involving extraneous offenses, to object to testimony that invaded the province of the jury, and to object to the court's purported misstatement of the law. He also alleges that his attorney cast him in a bad light by repeatedly referring to him as a "knucklehead."

To prevail on an ineffective assistance of counsel claim, appellant must prove by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). We examine the totality of counsel's representation to determine whether appellant received effective assistance. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We do not judge counsel's strategic decisions in hindsight, and we strongly presume counsel's competence. *Id.* Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* In most cases, a silent record which provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Id.* at 813–14. When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. *See Jackson v. State*, 877 S.W.2d 768, 772 (Tex. Crim. App. 1994).

In this case, appellant filed a motion for new trial and an amended motion for new trial. However, neither motion raised the issue of ineffective assistance of counsel. Thus, the record provides no discernible explanation of the motivation behind counsel's decisions, listed above, for which appellant claims harm. We will not speculate as to counsel's possible motives. "Ineffective assistance of counsel claims are not built on retrospective speculation; they must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813–14). No such record exists in this case. Accordingly, we cannot say that appellant received ineffective assistance from his counsel.

We overrule appellant's third issue.[5]

---

[5] Because the reasonableness of counsel's choices often involves facts that do not appear in the appellate record, a petition for writ of habeas corpus is usually the appropriate vehicle to investigate ineffective assistance claims. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). The Texas Code of Criminal Procedure entitles an indigent habeas applicant to appointed post-conviction counsel whenever the court concludes that the interests of justice require representation. CRIM. PROC. art. 1.051(d)(3); *see also Ex parte Garcia*, 486 S.W.3d 565, 578 (Tex. Crim. App. 2016) (Alcala, J. dissenting) ("The existing statutes, therefore, provide an adequate basis upon which to conclude that appointment of counsel is required in any case in which either the pleadings or the face of the record gives rise to a colorable, nonfrivolous claim for which legal expertise is required in order to ensure that the claim is afforded meaningful consideration.").

**Conclusion**

We affirm the trial court's judgment.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

181008f.u05

Do Not Publish
TEX. R. APP. P. 47



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

ARNULFO MERCADO-PENA, JR.,
Appellant

No. 05-18-01008-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 296-84147-
2017.
Opinion delivered by Justice
Pedersen, III. Justices Reichek and
Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 7th day of April, 2020.